UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61120-CIV-ALTMAN/Hunt

**CYNTHIA RYAN** and **ROBERT RYAN**,

    *Plaintiffs*,

v.

**ALLSTATE INSURANCE COMPANY**,

    *Defendant*.

_____/

## ORDER

Before the Hon. Roy K. Altman:

After the Plaintiffs ignored multiple Court orders, the Court exercised its inherent authority to manage its docket and dismissed their case without prejudice. The Plaintiffs then did nothing for over four months. They now ask the Court to set aside the order of dismissal. *See* Plaintiffs' Motion to Vacate the Order of Dismissal (the "Motion") [ECF No. 26].[1] But, because they (still) have given no justification for the delay—and since their claims were time-barred from the beginning—their Motion is **DENIED**.

### PROCEDURAL HISTORY

After an uneventful beginning, this case started going downhill nearly a year ago when the parties jointly asked the Court to postpone the long-scheduled mediation by two weeks, from January 8 to January 22, 2020. *See* Order Scheduling Mediation [ECF No. 12]; Notice of Rescheduling Mediation [ECF No. 15]. In a decision that would (ultimately) prove the old apothegm that no good

---

[1] The Motion is now ripe: The Defendant filed a Response [ECF No. 27] (filed on June 22, 2020); the Plaintiffs never replied, *see generally* Docket; and the time to do so has long passed, *see* S.D. FLA. L.R. 7.1(c)(1) ("The movant may, within seven (7) days after service of an opposing memorandum of law, file and serve a reply memorandum . . . .").

deed goes unpunished, the Court obliged. *See* Order Rescheduling Mediation ("Revised Order") [ECF No. 18]. The Revised Order—like the prior one—required the parties to file a mediation report within three days of the mediation. *Id.* Just as it had before, the Court warned the parties that their failure to file a mediation report—this time, by the new deadline of January 25, 2020—"may result in sanctions, including dismissal without prejudice and without further notice." *Id.*

But the parties neither filed a mediation report nor requested an extension of time to do so. *See* Order of Dismissal [ECF No. 25] at 2. So, on February 1, 2020, the Court entered an Order to Show Cause, directing the parties to file a mediation report by February 4, 2020. *See* Order to Show Cause [ECF No. 20]. Again, the Court warned the parties that their failure to comply with the Court's orders "may result in sanctions, including dismissal without prejudice and without further notice." *Id.*

This time, the Defendant (and only the Defendant) responded—explaining that the mediation had not taken place because the Plaintiffs were of the view that the Court had terminated the mediation deadline. *See* Mediation Report [ECF No. 24]. In support, the Defendant attached an email from Plaintiffs' counsel's paralegal (copying Plaintiffs' counsel), in which she appeared to say precisely that. *See* January 17, 2020 Email from Nicole Woods [ECF No. 24-1] ("The Judge entered the attached docket entry terminating the settlement conference order. Therefore, terminating the deadline to schedule mediation."). The Plaintiffs never responded to this Defendant-Only Mediation Report—just as they never answered either the Court's Revised Order or its Order to Show Cause. *See generally* Docket. Left with little choice—and faced with the Plaintiffs' continued unwillingness to prosecute its own case—the Court dismissed the Complaint without prejudice. *See* Order of Dismissal at 2. Unsurprisingly, the Plaintiffs then did absolutely nothing—nothing that day, nothing that week, nothing that whole month. Or the next month. Or the month after that. Or even the month after that. *See generally* Docket.

Now, more than four months later, the Plaintiffs blame their repeated disregard of this Court's

2

orders on a clerical mistake and ask the Court to vacate the dismissal. Mot. ¶ 17.[2] In doing so, however, they do not even attempt to explain the four-plus-month delay after dismissal. *See id*.

## THE LAW

The Plaintiffs rely on Florida Rule of Civil Procedure 1.540(b). *See* Mot. ¶ 18. But "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Hum.*, 518 U.S. 415, 427 (1996). Because the process of classifying laws as either substantive or procedural can be tricky, "we do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid." *Shady Grove Orthopedic Assoc.*, *P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Fortunately, there's a valid Federal Rule of Civil Procedure that's directly on point here. Rule 60 provides, in pertinent part, as follows:

> (a) **Corrections Based on Clerical Mistakes; Oversights and Omissions**. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.
>
> (b) **Grounds for Relief from a Final Judgment, Order, or Proceeding**. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>    (1) mistake, inadvertence, surprise, or excusable neglect;
>    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>    (4) the judgment is void;
>    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>    (6) any other reason that justifies relief.

FED. R. CIV. P. 60.

---

[2] One would think that the Plaintiffs would simply refile their case. The Court, after all, dismissed the Complaint *without prejudice*. *See generally* Order of Dismissal. But the Plaintiffs say that they can't refile because their claims are now time-barred. Mot. ¶ 27.

3

As a preliminary matter, the Plaintiffs' wholesale reliance on the wrong legal standard—indeed, on the wrong jurisdiction's legal regime—provides sufficient grounds, standing alone, to deny the Motion. *See, e.g.*, *Aldar Tobacco Grp. LLC v. Am. Cigarette Co., Inc.*, 2010 WL 11601994, at *1 (S.D. Fla. Dec. 29, 2010) (Jordan, J.) ("[The plaintiff cites] seven cases, arguing that they show that, even where the motion lacks legal authority, a court should consider the motion on the merits. But those cases state the opposite."); *Belony v. Amtrust Bank*, 2011 WL 2297669, at *2 (S.D. Fla. June 8, 2011) (Marra, J.) ("Even if this were true, which depends on other factors Defendant does not address, Defendant's failure to cite *any* authority for this principle makes it difficult for the Court to rule in its favor. Defendant's deficient memorandum of law is itself a basis to deny its motion.").

Nevertheless, the Court will give the Plaintiffs the benefit of the doubt and indulge the merits of their Motion anyway. The next problem, however, is that, since they rely exclusively on Florida law, they never get around to explaining which prong of Rule 60 (they believe) affords them relief. On the one hand, they blame their failure to mediate on "a clerical mistake"—which seems to track the language of Rule 60(a). Mot. ¶ 17. On the other hand, they also claim "mistake, inadvertence, surprise, or excusable neglect"—mirroring some of the justifications outlined in Rule 60(b)(1). *Id.* ¶ 18. In the end, though, whichever prong we use, the Motion fails.

## ANALYSIS

Starting with the first prong of Rule 60, a court may correct a judgment under Rule 60(a) "for the purpose of reflecting accurately a decision that the court actually made." *Fed. Home Loan Mortg. Corp. v. Matassino*, 517 F. App'x 687, 688 (11th Cir. 2013) (quoting *Weeks v. Jones*, 100 F.3d 124, 129 (11th Cir. 1996)). Thus, a district court may not amend a judgment "to reflect a new and subsequent intent" but only to "correct clerical errors to reflect what was intended at the time of ruling." *Id.* (quoting *Weeks*, 100 F.3d at 128).

The Plaintiffs' lawyer says that her legal assistant interpreted an unnumbered, December 3,

2019 docket entry—"\*\*\*Settlement Conference terminated per chambers' instruction. (ar2). (Entered: 12/03/2019)"—as terminating the February 25, 2020 mediation deadline the Court had set in its Scheduling Order [ECF No. 10]. *See* Mot. ¶ 12.[3] This was not a *clerical* mistake. The Court, after all, intended to do precisely what it did: cancel the January 8, 2020 mediation and move it to January 22, 2020, *see* Revised Order—precisely as the parties had requested, *see* Notice of Rescheduling Mediation. And, it goes without saying, the ruling the Plaintiffs are really challenging— the dismissal—likewise resulted from no mistake. The Court—suffice it to say here—intended to dismiss their Complaint. The Plaintiffs have thus failed to meet their burden under Rule 60(a).

Nor does Rule 60(b)(1) afford them relief. The Plaintiffs blame their failure to file a mediation report on "inadvertence and/or excusable neglect." Mot. ¶ 22. Rule 60(b)(1) allows district courts to vacate judgments that result from "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1); *see also Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 394 (1993). But "Rule 60(b) motions are directed to the sound discretion of the district court," and the Eleventh Circuit "will set aside the denial of relief from such motion only for abuse of that discretion." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Chege v. Georgia Dep't of Juv. Justice*, 787 F. App'x 595, 598

---

[3] In fact, as anyone who has ever used CM/ECF knows, this entry didn't "terminate" the mediation deadline (or any other deadline). It wasn't even an order from this Court—as is obvious from (1) the fact that it's unnumbered and (2) its inclusion of the phrase "as per chambers instructions." The Court, it should go without saying, doesn't enter orders "as per" its own "instructions": that would make no sense. Instead, the phrase "as per chambers instructions" reveals that the Clerk of Court read the Court's Revised Order—in which the Court simply allowed the parties, per their request, to move the mediation from January 8 to January 22—and then, consistent with that Order, terminated the January 8, 2020 mediation. Now, this is all so elementary that it's hardly worth mentioning here. But, if Plaintiffs' counsel had been at all confused about any of this, the proper course would have been to file a Motion for Clarification (or even to call chambers). What counsel was not entitled to do, however, was to ignore the Court's Revised Order, refuse to attend the Court-ordered mediation, miss the mediation report deadline, ignore the subsequent Order to Show Cause, fail to respond to the Defendant-Only Mediation Report, and then fail to do anything for more than four months in response to the Court's Order of Dismissal.

(11th Cir. 2019) (vacating denial only because "the district court erred in failing to show that the district court considered each of the pertinent *Pioneer* factors and weighed everything before making the determination about excusable neglect"). Indeed, the Eleventh Circuit has "demonstrated its wariness of grants of Rule 60(b)(1) relief for excusable neglect based on claims of attorney error,"[4] even though "such a result [would] appear to penalize innocent clients for the forgetfulness of their attorneys." *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993). In the end, as the Eleventh Circuit has explained, "a client must be held accountable for the acts and omission of their attorneys." *Pioneer Inv. Serv. Co.*, 507 U.S. at 396.

In assessing a motion premised on "excusable neglect," this Court must examine "all relevant circumstances surrounding the party's omission." *Id.* at 395. The Supreme Court has defined the "relevant circumstances" as including: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its impact on the proceedings; (3) the reason for the delay and whether it was within the movant's control; and (4) whether the movant acted in good faith. *Id.* The Court placed "primary importance" on (a) the question of prejudice and (b) the public's interest in efficient judicial administration. *Id.* at 397–98; *see also Chege*, 787 F. App'x at 598 ("Our court then extended *Pioneer*'s bankruptcy-rule decision to Rule 60 cases; our precedents say a court abuses its discretion when the court fails to consider, at least, each of the factors announced in *Pioneer* when ruling on a Rule 60(b) motion."). "The determination whether neglect is excusable is at bottom[,] an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 396 (cleaned up). The first three factors—and especially the third—weigh

---

[4] Plaintiffs' counsel tries to shift the blame onto her legal assistant—and even refers to her by name. Mot. ¶ 12. But, under Florida's rules of professional conduct, a "lawyer must review and be responsible for the work product of the paralegals or legal assistants." RULES REGULATING THE FLORIDA BAR 4-5.3 (2020). The "be responsible" portion of this rule strongly supports this Court's view that the paralegal's misfeasance must be imputed to the lawyer.

against the Plaintiffs here.[5]

*First*, the Defendant says that it would be prejudiced by any decision to reopen the case. *See* Response ¶ 13. And this makes sense. When a case is dismissed, a defendant—and his lawyer—might justifiably rely on the dismissal to (as it were) move on with their lives. They might stop investigating the plaintiffs' claims, lose track of witnesses, shift their focus to other matters, remove litigation holds on vital evidence, and trash (or send to storage) the contents of discovery files. Of course, where the delay between the dismissal is only a few days or weeks, this prejudice is easier to mitigate or reverse. One might even suppose that a defendant who's won a dismissal on technical or procedural grounds might be expected to retain its files for a time—just in case. But, where (as here) the dismissal is followed by months of inactivity and silence, a defendant can be forgiven for assuming both that the case is over *and* that it's not coming back. And where a defendant (understandably) acts on that presumption—by ceasing its investigation, getting rid of old files, etc.—the degree of prejudice that would attend the reopening of the case naturally increases.

That's particularly true in cases like this one—where the dismissal follows the plaintiff's repeated and inexcusable unwillingness to prosecute her own case. To understand why, consider two scenarios. In the one, a plaintiff's claim is dismissed because of some legal deficiency—say, as a shotgun pleading or for failing to set out the elements of the cause of action. In this first scenario, a defendant should expect that the plaintiff will come back and remedy the problem—either by filing an amended complaint or, if the case is dismissed for lack of jurisdiction, by asking the court for some jurisdictional discovery. In these cases, then, a defendant should be prepared to continue to defend itself even after the case is dismissed—and, as such, should be expected to retain its files (not indefinitely, of course, but for a time). Consider a second scenario, though—one more akin to ours.

---

[5] The Defendants do not argue that the Plaintiffs are operating in bad faith—and so, the Court will assume that this fourth factor tilts in the Plaintiffs' favor.

In this second type of case, the plaintiff only intermittently appears on the docket, fails to take necessary discovery, ignores the court's orders, and doesn't show up to court-ordered hearings or mediations. What's worse, when the court admonishes the plaintiff to comply—and then cautions the plaintiff that her failure to do so will result in dismissal—the plaintiff does absolutely nothing. Now, add to all this the sequence of events we have here: a dismissal born of the plaintiff's silence is followed by more than four months of, well, more silence. In this second scenario, a defendant would be entirely justified in attributing the pre- and post-dismissal inactivity, not to the plaintiff's efforts at correcting substantive deficiencies, but to the plaintiff's ambivalence about the merits of her claim, apathy about the virtues of the litigation, or even disappearance. Whatever the cause, in such circumstances, no defendant should be expected to wait indefinitely for the plaintiff's return. To the contrary, one should expect the opposite: that the defendant and its lawyers will have formalized the process of moving on—with all the prejudice that any effort at undoing that process typically entails. The point is this: The Court is persuaded that the Defendant would suffer prejudice here.[6]

All that said, even had the Defendant failed to establish prejudice, the Motion (as we describe below) would still fail. *See, e.g.*, *Securities Exchange Comm'n v. Simmons*, 241 F. App'x 660, 664 (11th Cir. 2007) ("But we made clear in *Valdez* that a lack of prejudice is not enough, by itself, to warrant relief." (citing *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291(11th Cir. 2003)).

*Second*, re-opening the case would stymie, rather than promote, the efficient administration of justice. While the Eleventh Circuit has reiterated its "strong policy of determining cases on their merits," *Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007), allowing a party to ignore multiple court deadlines, to sit idly by while the case is dismissed, and then (months later) to

---

[6] Nor will the Court consider the Plaintiffs' separate contention that the Court's refusal to grant their Motion would prejudice *them*. *See* Mot. ¶ 27. The *Pioneer* factors, after all, weigh only the prejudice to the "opposing party." *Pioneer Inv. Serv. Co.*, 507 U.S. at 396. And with good reason: Any prejudice to the Plaintiffs in this case is entirely self-inflicted.

8

move to re-open the case would undermine the Court's "unquestionable authority" to manage its own docket, *Smith v. Psychiatric Solutions, Inc*., 750 F.3d 1253, 1262 (11th Cir. 2014). If the Plaintiffs, on these facts, got their way, there would be nothing federal judges could do to prevent parties from ignoring court orders with impunity—content in the knowledge that, weeks or even months after the dismissal, they could simply move, without prejudice, to resurrect their cases.[7]

It's worth noting, too, that (according to the Defendant) the "Plaintiffs' action was time barred and legally insufficient before this case was ever initially filed." Response ¶ 14. The Plaintiffs never respond to this assertion—and, accordingly, have waived the point. *See, e.g.*, *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) ("A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions.").

In any event—whether the Plaintiffs waived the point or not—the Defendant is right. The Plaintiffs admit that their property was damaged "on or about September 10, 2017." Compl. [ECF No. 4-2] ¶ 8. And claims for breaches of the NFIP Standard Flood Insurance Policy ("SFIP")—which, it is undisputed, is what's at issue here—must be brought within *one year* of the insurer's written denial of the claim. *See* 44 C.F.R. Pt. 61, App. (A)(1), Art. VII (R) ("[Y]ou must start the suit within one year after the date of the written denial of all or part of the claim . . . ."). The Defendant (partially)

---

[7] The Plaintiffs also admit to violating Local Rule 7.1(a)(3), which required them to confer with opposing counsel *before* filing the Motion. *See* Mot. ¶ 28 ("Undersigned counsel has not had a chance to confer with Defendant's counsel as of yet but intends to schedule such conference at the first available time for both parties."). This violation of the Court's Rules provides a separate and independent basis for denying the Motion. *See* S.D. FLA. L.R. 7.1(a)(3) ("Failure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion . . . .").

denied the Plaintiffs' claim at the end of November 2017. *See* Response ¶ 15 ("Allstate mailed its partial denial letter to Plaintiffs on November 30, 2017."); Plaintiffs' Initial Interrogatories [ECF No. 1-1] at 14 ("'Underpayment letter' means the letter regarding underpayment of coverage, dated December 1, 2017."). Thus, the Plaintiffs had until November 30, 2018 (or, at the latest, December 1, 2018) to bring this lawsuit. But, since they didn't file their Complaint until April 2019, *see generally* Complaint, their claim is time-barred. If "efficient administration of justice" means anything, it must mean that a Court need not re-open a stale case four months after it was dismissed for want of prosecution only to re-dismiss it a second time as time-barred.

*Third*, the delay itself was *entirely* within the Plaintiffs' control. The Plaintiffs claim that they misunderstood the Court's December 3, 2019 docket entry. Mot. ¶ 12. Fair enough. But any confusion was easily remedied by the Court's February 1, 2020 Order to Show Cause, which unambiguously required the parties to "submit a mediation report indicating the results of the January 22, 2020 mediation." *See* Order to Show Cause. Perhaps recognizing this, the Plaintiffs advance no excuse for their failure to comply with that Order to Show Cause. Nor do they suggest that they somehow failed to understand that Order's express admonition about the consequences of any further non-compliance. And, of course, it was only after the Plaintiffs failed to comply with the Order to Show Cause that the Court (finally) dismissed the case. *See* Order of Dismissal at 2.

It's true that, if the Plaintiffs had moved expeditiously to set aside the judgment, the Court might have considered the Motion in a different light. But the Plaintiffs waited over *four months* to file this Motion—and, still, have given no explanation for their failure to comply with the express terms of the Order to Show Cause. As the Eleventh Circuit has said, "[a]n inexplicable delay in filing a motion to vacate" will "preclude[] relief under Rule 60(b)(1)." *Simmons*, 241 F. App'x at 664 (finding no excusable neglect where defendant "inexplicably waited over four months to file a motion to vacate"); *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1292 (affirming denial of Rule 60(b) motion

where party waited two months to file motion to vacate and "has not offered any reason, let alone a 'good reason'" for the delay); *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.3d 524, 529 (11th Cir. 1990) ("[W]e note that counsel delayed filing a motion to set aside the default until almost four months after a notice of appearance was filed. We are convinced that the district court did not abuse its discretion [in denying the Rule 60(b) motion]."); *see also Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996) (reversing a denial of a Rule 60(b) motion where the delay was only six days); *see also id.* ("[T]he lack of prejudice to Anchor Glass, the minimal degree of delay and the reason therefor, and the lack of impact on the judicial proceedings, when coupled with the lack of bad faith on the part of Cheney, require a finding by the district court that the neglect of Cheney's counsel was 'excusable.' The district court's failure to so find and to apply the correct legal standard and factors as announced in *Pioneer* constitute an abuse of discretion.").

\*\*\*

"At bottom," the decision to vacate a judgment for excusable neglect is "an equitable one." *Pioneer*, 507 U.S. at 396. For all the reasons discussed here, the Court elects not to exercise that equitable discretion here. Accordingly, the Court hereby ORDERS and ADJUDGES that the Motion [ECF No. 26] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 14th day of December 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record